**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
Luke W. Sironski-White (State Bar No. 348441)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        bscott@bursor.com
        lsironski@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SERGIO YONI CANO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>BLUE DIAMOND GROWERS,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sergio Yoni Cano ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Blue Diamond Growers ("Defendant" or "Blue Diamond"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegation specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of Plaintiff Sergio Yoni Cano and all similarly situated current and former hourly paid and non-exempt employees of Blue Diamond Growers in California (the "Employees"). Defendant, by virtue of its management and control over the wages and work of the Employees, is an "employer" under applicable labor law.

2. The gravamen of this action is that Blue Diamond, an American agricultural cooperative, implemented an illegal policy requiring non-exempt workers to undergo a health screen for COVID-19 before every shift without pay. This practice required the Employees to wait and submit to a COVID-19 symptom check prior to clocking-in before every shift. These screenings were a uniform practice and policy in all Blue Diamond locations.

3. The screenings are done solely for the benefit of Blue Diamond, and thus constitute compensable time worked by Plaintiff and the Class Members. Accordingly, Plaintiff brings this action on behalf of himself and all other similarly situated Blue Diamond employees to recover wages, overtime compensation, penalties, interest, injunctive relief, damages, and reasonable attorney fees and costs under Cal. Lab. Code §§ 1194, 510, 201, 202, 203, 204, and 226 *et seq*.

4. Blue Diamond's conduct also violates the Fair Labor Standards Act ("FLSA"), which requires non-exempt employees to be compensated for all hours in excess of forty (40) in a workweek at one and one-half times their regular rate. *See* 29 U.S.C. § 207(a). Plaintiff, on behalf of himself and all other similarly situated employees, brings this action as a collective action under the FLSA. Members of the collective action are referred to hereinafter as the "FLSA Class Members."

**PARTIES**

5. Plaintiff Sergio Yoni Cano is a citizen of California and resides in Woodland, California. Mr. Cano was employed by Blue Diamond as machine operator, roasting almonds in its downtown Sacramento, California location at 1802 C Street, Sacramento, California 95811 from February 2021 through July 2021.

6. Mr. Cano worked full-time and was paid an hourly rate of about $25.80 per hour and worked between 50 to 60 hours per week on average. Mr. Cano would often work 6 or 7 days per week. During Mr. Cano's employment at Blue Diamond, he was required to wait and undergo an uncompensated COVID-19 health screening prior to every shift before clocking in. The health screenings were significant, integral, and indispensable, not a de minimis task or request, and done to prevent the spread of COVID-19 amongst Blue Diamond employees. By way of example, during every week of his employment, Mr. Cano spent 12 to 15 minutes per day waiting and undergoing the health screening. During any given week, Mr. Cano worked approximately 75 minutes of uncompensated time. Thus, because of Defendant's unlawful uncompensated COVID-19 health screenings, Mr. Cano was deprived of wages as required by the California Labor Code. By conservative calculations, this equates to a total of between approximately $804 and $838.50 in uncompensated wages over the course of Mr. Cano's employment. The amount of uncompensated wages may be greater if Mr. Cano is entitled to overtime pay for the time spent during the health screenings, between $807.54 and $1,257.75. Plaintiff Cano's written consent to this collective action is attached hereto as **Exhibit A.**

7. Defendant Blue Diamond Growers is a California company with its principal place of business in Sacramento, California. Blue Diamond is known for producing almonds. On information and belief, Defendant employs more than 1,500 employees and operates three (3) "campuses,"[1] and three (3) nut and gift shops in Northern California.

8. The wages, hours, and policies relating to wage compensation are and were centrally and collectively dictated, controlled, and ratified. As such, Defendant had the power to

---

[1] The Blue Diamond campuses are secure areas that include storage facilities, processing and manufacturing plants, shipping and receiving facilities, and administrative offices.

control wage policies and practices described herein through its oversite of day-to-day operating procedures, control over employee work schedules, ability to determine employee's rate of pay, and ability to control record keeping practices. As such, Defendant is the "employer" of Plaintiff and other members of the proposed California Class and FLSA Class described below.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C §§ 203 *et seq*. The Court has supplemental jurisdiction over the state law wage and hour claims under 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

10. This Court has personal jurisdiction over the parties because Plaintiff resides in Woodland, California in Yolo County, is a citizen of California, and submits to the jurisdiction of the Court, and because Defendant has, at all times relevant hereto, systematically and continually conducted, and continues to conduct business in this state. Defendant therefore has sufficient minimum contacts with this state, including within the Eastern District, and/or purposefully availed itself of the benefits and privileges of the California consumer market through operating businesses within the Eastern District and throughout this State. Additionally, Defendant employed Plaintiff in the Eastern District of California.

11. Venue is proper in the Eastern District of California because a substantial portion of the events forming the basis of this suit occurred in the Eastern District of California. Plaintiff Cano worked in the Eastern District of California and was denied wages in this district.

## FACTUAL ALLEGATIONS

12. Following the outbreak of the Coronavirus ("COVID-19"), Blue Diamond implemented a company-wide policy requiring all hourly, non-exempt employees to undergo COVID-19 health screenings prior to clocking in for each shift. The screenings occurred on Blue Diamond premises, were required by Defendant, and were necessary for each employee to perform their work for Blue Diamond. However, Defendant did not compensate its employees for this time. Defendant's conduct violates both California and federal law.

13. Blue Diamond has well over 1,500 hourly paid non-exempt Employees. Each Employee is employed at a specific Blue Diamond location.

14. Each Blue Diamond campus is staffed by employees in multiple roles, including machine operators, quality inspectors, management, and supervisors. Every Employee was subject to the COVID-19 health screenings.

15. Defendant hired Plaintiff and promised to pay hourly wages for his work. On average, machine operators roasting almonds are paid $28 per hour, and work forty (40) hours per week.

16. Defendant requires its employees to arrive at work prior to the start of their scheduled shifts. However, during the Pandemic, when Blue Diamond employees arrived at work they were not allowed to clock-in for their shift until after they completed the COVID-19 health screening.

17. The screening process involved employees waiting in line in their vehicles at the gated entrance to the Blue Diamond campus. Once an employee reached the gate, a person manning the gate took their temperature before letting them drive through the gate. After driving through the gate and parking, the Employees were then allowed to scan their badge to clock in for their shift.

18. The amount of time it took for an employee to undergo a COVID-19 health screening was approximately 12 to 15 minutes on average. This amount of time could have been longer if there were other employees waiting in line at the gated entrance to do the COVID-19 health screening.

19. The COVID-19 health screenings should have been paid for by Defendant because the screenings constituted compensable time worked. During this time, Plaintiff and the Class Members were subject to the control of Defendant because they compelled to perform specific tasks during the screenings.

20. The COVID-19 health screenings were necessary to prevent the transmission of the virus among Blue Diamond employees. The screenings were also necessary to ensure that the virus did not disrupt the work performed by Plaintiff and Class Members or affect the business

operations of Blue Diamond.  Without the COVID-19 health screenings, employees could have unintentionally spread the virus potentially infecting hundreds of other Blue Diamond employees.

21. The Department of Labor has issued regulations stating that health examinations, like a COVID-19 health screening, constitute time that employees should be compensated for by employers.  *See* 29 CFR § 785.43.

22. Due to Defendant's unlawful conduct and substantial pre-shift work, Plaintiff and the Class members are owned significant unpaid wages.

23. Plaintiff and Class Members are non-exempt employees.

24. Plaintiff and Class Members are paid on an hourly rate basis.

25. When Plaintiff and Class Members worked more than eight (8) hours in a day or forty (40) hours in a week, they were entitled to overtime pay.

26. Defendant's method of paying Plaintiff and the Class Members in violation of the FLSA and California law was willful and not based on a good faith and reasonable belief that its conduct complied with the law.  Defendant knew of the requirement to pay employees for all time worked, but intentionally and/or recklessly chose not to pay its employees for all time worked.

## CLASS ALLEGATIONS

27. ***Class Definition.***  Plaintiff Cano brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the **California Class**, which is comprised of:

> All current and former hourly paid employees of Blue Diamond in California who, during the applicable limitations period, were subjected to COVID-19 health screenings prior to clocking-in for work over the course of at least one week.

28. Excluded from the class are Defendant, its legal representative, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Blue Diamond.  Also excluded are any persons and entities who submit timely and otherwise proper requests for exclusion from the class.

29. ***Numerosity.***  The number of members in the California Class is believed to exceed forty and is likely to be over one thousand.  This volume makes bringing individual claims before this Court impracticable.  Likewise, the members of the class are so numerous that joinder of all

members in one proceeding is impracticable. As such, a class action is a reasonable and practical means of resolving these claims.

30. ***Typicality.*** Plaintiff's claims are typical of the claims of the other Class Members because they were hourly-wage, non-exempt employees who were not compensated for work performed at the employer's request while waiting for and undergoing COVID-19 health screenings. Plaintiff and other Class Members have sustained similar types of damages because of Defendant's failure to comply with the California Labor Code and other California state labor law statues. Plaintiff and other Class Members have been injured in that they have been uncompensated or undercompensated due to Defendant's common policies, practices, and patterns of conduct.

31. ***Adequacy.*** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class action and wage and hour litigation. There is no conflict between the Plaintiff and the Class.

32. ***Commonality and Predominance.*** Common questions of law and fact exist as to the Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

    (a)    Whether Defendant failed and/or refused to pay Plaintiff and the Class for all compensable time they worked for Defendant while undergoing COVID-19 health screenings prior to clocking in before a shift in violation of Cal. Lab. Code §§ 1194, 510, 201, 202, 203, 226 *et seq*.

    (b)    Whether Defendant failed to keep true and accurate time records for all hours worked by their employees as required by Cal. Lab. Code § 226;

    (c)    Whether Defendant correctly compensated members of the Class for hours worked in excess of forty (40) per work week;

    (d)    Whether Defendant correctly compensated members of the Class for hours worked in excess of eight (8) per day;

    (e)    Whether Defendant engaged in a pattern or practice in California

                of forcing, coercing, and/or permitting Plaintiff and Class Members to perform work for Defendant's benefit which was not compensated;

    (f)    Whether Defendant's policy of failing to pay workers was instituted willfully or with reckless disregard of the law;

    (g)    Whether Defendant failed to comply with Cal. Lab. Code §§ 201 and 202 *et seq*. and is thus subject to a waiting time penalty under Cal. Lab. Code § 203; and

    (h)    The nature and extent of class-wide injury and the measure of damage for those injuries.

33. **Superiority.** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

34. Without a class action, Defendant will retain the benefit of its wrongdoing and will continue a course of action that will result in further damage to Plaintiff and the Class.

## FLSA COLLECTIVE ACTION ALLEGATIONS

35. Plaintiff has actual knowledge that the FLSA Class Members have also been denied pay for hours worked over forty (40) per week. Plaintiff worked with and communicated with other hourly, non-exempt employees and as such, has personal knowledge of their existence, status as Blue Diamond employees, pay structure, and the overtime violations.

36. Blue Diamond has employed numerous other employees throughout the US during the last three (3) years, who were paid on an hourly basis, were classified as non-exempt from overtime, and who underwent the COVID-19 health screening without pay.

37. The "**FLSA Class**" is properly defined as follows:

> All current and former hourly paid employees of Blue Diamond who underwent a COVID-19 health screening during at least one week in the three (3) year period before the filing of this Complaint up to the present.

38. Although Defendant permitted and/or required the FLSA Class Members to work more than forty (40) hours per workweek, Defendant has denied them compensation for their hours worked over forty (40).

39. FLSA Class Members were classified as non-exempt.

40. FLSA Class Members were paid on an hourly basis.

41. FLSA Class Members were required to undergo the COVID-19 health screening.

42. FLSA Class Members regularly work or have worked more than forty (40) hours during a workweek.

43. FLSA Class Members were not paid for the time spent in the COVID-19 health screening.

44. The policy of failing to pay for the time spent in the COVID-19 health screening is universal across the defined FLSA Class and forms the basis of the overtime violation.

45. FLSA Class Members are not exempt from receiving overtime pay under the FLSA.

46. Defendant's failure to pay overtime compensation at the rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the FLSA Class Members.

47. The experience of the Plaintiff, with respect to his pay, is typical of the experiences of the FLSA Class Members.

48. The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

49. All FLSA Class Members, irrespective of their particular job requirements, are entitled to overtime compensation at the rate of time and a half for hours worked in excess of forty (40) hours during a workweek.

50. Although the exact amount of damages may vary among FLSA Class Members, the damages can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Blue Diamond that caused harm to all FLSA Class Members.

51. The similarly situated FLSA Class Members are known to Blue Diamond, are readily identifiable, and can be located through Blue Diamond's records. They should be notified and allowed to opt into this action pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages and/or prejudgment interest, and attorneys' fees and costs.

52. Unless the Court promptly issues such notice, the numerous similarly situated workers nationwide will be unable to secure unpaid overtime pay unlawfully withheld by Defendant.

**FIRST COUNT**
**Nonpayment of Wages**
**Cal. Lab. Code §§ 204, 218**

53. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

54. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

55. Plaintiff Cano and members of the Class were employees of Blue Diamond, and Defendant was the employer of Plaintiff and the Class Members within the meaning of the California Labor Code.

56. Defendant has willfully failed to pay Plaintiff and the Class Members all straight rate wages as set forth in the preceding paragraphs of this Complaint.

57.     Plaintiff Cano and members of the Class were entitled to be paid compensation for all hours up to 40 hours worked in a workweek on their designated pay days pursuant to Cal. Lab. Code § 204.

58.     Defendant was not and is not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of Plaintiff's and the Class's unpaid wages sought in this lawsuit.

59.     Defendant was not authorized by Plaintiff or any Class members to withhold, divert, or deduct any portion of their unpaid wages sought in this lawsuit.

60.     Because Defendant required Plaintiff and the Class Members to undergo unpaid COVID-19 health screenings before clocking-in at the beginning of their shifts, Defendant has violated the California Labor Code by failing to pay Plaintiff and the members of the Class for all compensable time and within the time periods set by Cal. Lab Code § 204.

61.     Accordingly, Plaintiff on behalf of himself and the Class, seeks the amount of wages wrongfully withheld as a result of Defendant's unlawful COVID-19 health screening policy plus interest as provided by Cal. Lab. Code § 218, plus attorneys' fees and costs as the Court deems just and proper.

## SECOND COUNT
### Failure to Pay Overtime
### Cal. Lab. Code §§ 510, 1194

62.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

63.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

64.     At all times, Defendant was required to compensate all non-exempt employees for all hours worked.  Pursuant to California Labor Code § 510 and IWC Wage Order No. 8-2001 3(A)(1), Defendant was also required to compensate all its employees for all overtime worked at one and one-half times their regular rates of pay for hours worked more than eight (8) hours per day or forty (40) hours per workweek and double-time for hours worked more than twelve (12)

hours per day.  Defendant was also required to pay one and one-half times the regular rate for the first eight (8) hours worked on the seventh day of a workweek.

65. Defendant operated under a common policy of willfully failing to pay Plaintiff and the Class Members for overtime at the rates required by California Wage Order No. 8-2001 3(A)(1) and California Labor Code § 510.

66. Defendant knew or clearly should have known that Plaintiff and the members of the Class were entitled to compensation for the time they spent in the COVID-19 health screenings.

67. Defendant routinely required Plaintiff and Class Members to work more than eight (8) hours per day or forty (40) hours per workweek.  Despite the provisions of California's overtime law, Defendant has willfully failed and refused to pay the Class, including Plaintiff, overtime wages for any of the overtime hours they worked during the statutory period covered by this lawsuit.

68. The Class Members, including Plaintiff, have been deprived of their rightfully earned overtime wages as a result of Defendant's failure to pay for all hours worked during the COVID-19 health screenings.

69. Defendant regularly, willfully, and repeatedly failed to make, keep, and preserve accurate time records required by the California Labor Code § 226, with respect to the Plaintiff and Class Members.  Defendant has deprived and continues to deprive Plaintiff and members of the Class of records necessary to calculate the overtime compensation due to them.

70. Defendant's conduct violates California Labor Code § 1194.  Therefore, pursuant to California Labor Code § 1194, the California Class, including Plaintiff, are entitled to recover, and seek to recover, damages for the nonpayment of overtime wages for all overtime hours worked in excess of eight (8) hours per day, in excess of forty (40) hours per workweek, for the first eight (8) hours worked on the seventh day of a workweek, and double-time pay for the hours worked in excess of twelve (12) in a day in addition to interest on such amounts pursuant to California Labor Code § 1194, plus reasonable attorneys' fees and costs, and the relief requested below in the Prayer for Relief.

**THRID COUNT**
**Failure to Provide Accurate Wage Statements**
**Cal. Lab. Code § 226 *et seq*.**

71. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

72. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

73. California Labor Code §226(a) requires every employer, including Defendant, to furnish each employee, semimonthly or at the time of each payment of wages, with an accurate itemized wage statement, in writing, showing the total hours worked by the employee and the net wages earned.

74. Defendant violated Section 226(a) by failing to maintain accurate records and by failing to furnish each employee with accurate itemized wage statements either semimonthly or for each pay period that reflected all time spent waiting for and undergoing COVID-19 health screenings. Defendant's refusal to properly record this time, to include it in its itemized wage statements, or to properly pay its employees for this time was willful and intentional. As a result of these violations, Plaintiff and members of the Class suffered injury because they were not paid for all hours worked.

75. Pursuant to Labor Code § 226(e)(1)(a), Plaintiff and the members of the Class are each entitled to all actual damages and attorney's fees and costs. Pursuant to Labor Code § 226(h), each currently employed member of the Class is entitled to injunctive relief to ensure Defendant's compliance with Section 226.

**FOURTH COUNT**
**Failure to Pay Wages Within 72 Hours of Cessation of Employment (Waiting Time Penalties)**
**Cal. Lab. Code §§ 201, 202, 203**

76. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

77. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

78. California Labor Code § 203 states that if an employer willfully refuses to pay, without abatement or reduction, in accordance with Labor Code §§ 201 and 202, any wages of an employee who is discharged or who quits, the employee's wages shall continue as a penalty for up to 30 days from the due date, until paid or until an action to recover those wages is commenced.

79. Plaintiff Cano and members of the Class who are no longer employed by Defendant were entitled to timely payment, upon cessation of their employment, of their wages for all time spent waiting for and undergoing COVID-19 health screenings. Defendant's refusal to timely pay such wages was willful. Defendant knew or should have known that such wages were due and payable to Plaintiff and the California Class, yet failed to pay them in a timely manner, as required by Sections 201 and 202. Those wages remain unpaid.

80. Pursuant to Labor Code § 203, Plaintiff and each member of the Class who is no longer employed by Defendant is entitled to a penalty in the amount of his or her daily wage multiplied by 30 days.

**FIFTH COUNT**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**

81. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

82. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

83. The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200.

84. Defendant's conduct alleged above constitutes "unlawful" business acts or practices within the meaning of the UCL because such acts or practices violate each of the following laws:

    (a) Cal. Lab. Code §§ 201, 202, and 203 (requiring timely payment to employees who have been discharged or quit of all wages earned and unpaid);

    (b) Cal. Lab. Code § 204 (requiring that all wages be paid in full

semimonthly);

    (c)    Cal. Lab. Code § 226 (requiring accurate wage statements and records of work).

85. Plaintiff Cano and the other members of the Class lost money as a result of Defendant's unlawful conduct because if Defendant had complied with the law, Plaintiff and the Class would have been timely paid the wages they were owed as a result of waiting for and being subjected to COVID-19 health screenings.

86. Plaintiff and the members of the Class are entitled to restitution of all sums Defendant may have acquired by means of Defendant's unlawful conduct, as well as injunctive relief, costs of suit, and such other relief as the Court may deem appropriate.

## SIXTH COUNT
### Failure to Pay Overtime
### Fair Labor Standards Act, 29 U.S.C. § 203, *et seq*.

87. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

88. Plaintiff brings this claim individually and on behalf of the members of the FLSA Class against Defendant.

89. At all times, Defendant has been, and continues to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203. Defendant has employed and continues to employ employees, including Plaintiff and the FLSA Class Members, as defined by the FLSA. Defendant has had gross operating revenues in excess of $500,000.

90. The FLSA requires each covered employer, such as Blue Diamond, to compensate all non-exempt employees at a rate of not less than one and one-half times their regular rate of pay for work performed in excess of forty (40) hours in a workweek.

91. Plaintiff and the FLSA Class Members were entitled to be paid overtime compensation for all overtime hours worked at the rate of one and one-half times their regular rate of pay.

92. Defendant required and/or permitted Plaintiff and the FLSA Class Members to work more than forty (40) hours per workweek. Despite the hours worked by them, Defendant willfully, in bad faith, and knowingly violated the FLSA, failed and refused to pay Plaintiff and the FLSA Class Members the appropriate overtime wages for all compensable time worked in excess of forty (40) hours per workweek. Plaintiff and the FLSA Class Members were not paid the full amount of overtime wages due under the FLSA as a result of Defendant's failure and refusal to classify the time spent in the COVID-19 health screening as compensable time. By failing to compensate Plaintiff and the FLSA Class Members at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendant has violated the FLSA, 29 U.S.C. § 203 *et seq.*, including 29 U.S.C. § 207(a).

93. Plaintiff and the FLSA Class Members seek recovery of their damages, unpaid wages, unpaid overtime pay, liquidated damages, attorney's fees, costs and expenses.

94. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Sergio Yoni Cano, individually and on behalf of the Class, seeks the following relief:

a. At the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to the FLSA Class members as defined herein so that such persons shall be informed that this civil action has been filed, of the nature of the action, and of their right to join the FLSA collective suit if they believe they have been denied unpaid wages;

b. For an order certifying the Class under Fed. R. Civ. P. 23, and an order to certify that this action may proceed as a collective action under 29 U.S.C § 216(b);

c. The Court issues preliminary, permanent, mandatory injunctive relief prohibiting Blue Diamond, their officers, agents, and all those acting in concert with it, from committing in the future those violations of law herein alleged;

      d.      For an order declaring that the Blue Diamond's conduct violates the statutes referenced herein;

      e.      For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

      f.      For compensatory and punitive damages in amounts to be determined by the court and/or jury;

      g.      For pre-judgment interest on all amounts awarded;

      h.      For an order on restitution and all other forms of monetary relief;

      i.      For an order awarding Plaintiff and the Class their reasonable attorney's fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: June 29, 2023            **BURSOR & FISHER, P.A.**

                                        By:   */s/ Brittany S. Scott*
                                                  Brittany S. Scott

L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
Luke W. Sironski-White (State Bar No. 348441)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
           bscott@bursor.com
           lsironski@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT A**

**Fair Labor Standards Act Consent Form**

I, <u>Sergio Yoni Cano</u>, consent to be a party plaintiff in a lawsuit against Blue Diamond Growers and/or related entities in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).  I hereby designate Bursor & Fisher, P.A. to represent me in such a lawsuit.

Dated: 06/14/2023

By: Sergio Yoni Cano
Full Legal Name

███████████████
Street Address

Woodland, CA 95695
City, State, Zip